UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


SHARLENE KOLLSTEDT,                :          NO. 1:08-CV-00822
                                   :
         Plaintiff,                :
     v.                            :          **OPINION & ORDER**
                                   :
                                   :
PRINCETON CITY SCHOOLS BOARD       :
OF EDUCATION, et al.,              :
                                   :
         Defendants.               :


     This matter is before the Court on Defendants' Motion for
Summary Judgment (doc. 13), Plaintiff's Response in Opposition
(doc. 18), and Defendants' Reply (doc. 20). For the reasons
indicated herein, the Court GRANTS IN PART and DENIES IN PART
Defendants' Motion.

**I.  Background**

     A summary of the facts as alleged in Plaintiff's
Complaint follows. Plaintiff, a former employee of Defendant
Princeton City Schools Board of Education ("Princeton"), began
working for Princeton as a secretary in 1995 and, through a series
of promotions and transfers, became Payroll Supervisor in 1999, a
position she held through July of 2008 (doc. 10). In 2000, in
addition to her responsibilities as Payroll Supervisor, Plaintiff
was given the responsibilities of Assistant to the Treasurer, but
her job title remained the same (<u>Id</u>.). Her performance reviews
from 1999 through the end of the 2006-07 school year were
consistently positive (<u>Id</u>.). Plaintiff's immediate supervisor was

Defendant Tracy Jarvis, the Chief Financial Officer for Princeton, and Defendant Teresa Johnson, also an immediate supervisor of Plaintiff, was the Assistant Treasurer for Princeton (Id.). Plaintiff's job included completing or supervising the completion of nearly all payroll responsibilities (Id.).

In June of 2007, administrative employees, including Plaintiff were told by Princeton's Superintendent that they would be receiving a three percent raise for the upcoming school year (Id.). Johnson, however, informed Plaintiff later that despite what the Superintendent had said Plaintiff would only be receiving a one percent raise (Id.). Johnson also told Plaintiff that Plaintiff was the reason Johnson did not get the Treasurer's job (Id.). Because of this comment and "other daily stresses Plaintiff was enduring at the workplace," Plaintiff took FMLA leave and was gone from work for approximately eight weeks (Id.). When Plaintiff left for her leave, her work was up-to-date but when she returned she realized that no employee benefits reconciliations had been completed in her absence (Id.). To complete these reconciliations, she worked approximately fifty hours of overtime in January 2008 and seventy hours of overtime in February 2008 (Id.). She did not receive compensation for that overtime (Id.).

On January 4, 2008, Plaintiff received a negative performance evaluation, and on February 29, 2008, she was given a letter indicating that her contract with Princeton would not be

renewed (Id.). One of the reasons cited for the non-renewal was the failure to complete the employee benefits reconciliations, which failure occurred while she was on FMLA leave (Id.). Plaintiff followed the various appeals options available, to no avail, and her employment with Princeton ended on July 30, 2008 (Id.).

Plaintiff filed this action on November 21, 2008, with an amended complaint filed on April 16, 2009, alleging eight claims (Id.). In Count I, Plaintiff alleges that the non-renewal of her employment contract was retaliation for her having engaged in the protected activity of applying for and taking leave under the Family and Medical Leave Act (the "FMLA") (Id.). Count II is a claim of FMLA interference, with Plaintiff alleging that Defendants violated the FMLA when they forced her to complete work upon her return that should have been completed in her absence, forcing her to work overtime in order to do so, giving her a negative evaluation and ultimately not renewing her contract for failure to complete that work on time (Id.). Count III is a claim of intentional infliction of emotional distress ("IIED") (Id.). In Count IV, Plaintiff alleges that Defendants failed to provide her with written notice of her rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") to continuation of her health care coverage (Id.). Counts V & VI are claims for unpaid compensation under the Fair Labor Standards Act ("FLSA") and O.R.C.

§4111.03(A) for the overtime Plaintiff worked in January and February of 2008 (Id.). In Count VII, Plaintiff seeks punitive damages for the alleged COBRA violation and the FMLA retaliation claim, and in Count VIII she seeks attorney's fees under each of COBRA and the FMLA (Id.).

## II.  The Applicable Standard

Defendants styled the instant motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (doc. 13). Notably, Defendants' Motion was filed before the close of discovery. Having thoroughly reviewed the record and briefings before it, the Court finds that Plaintiff has not had an adequate opportunity to establish her right to recovery at this stage. Therefore, in the interests of justice, the Court finds it is more appropriate to analyze Defendants' Motion as a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6) and has proceeded accordingly.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993);

4

<u>Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental</u>
<u>Health Servs</u>., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam).  In
reviewing a motion for summary judgment, therefore, "this Court
must determine whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law." <u>Patton</u>
<u>v. Bearden</u>, 8 F.3d 343, 346 (6th Cir. 1993), <u>quoting</u> <u>in</u> <u>part</u>
<u>Anderson  v.  Liberty  Lobby,  Inc.</u>,  477  U.S.  242,  251-52
(1986)(internal quotation marks omitted).  A decision on a summary
judgment motion necessarily requires the Court to thoroughly review
the factual record before it, and the Court's decision must be
based on whether the record shows that genuine disputes about the
facts exist such that the matter should be decided by a jury.
Here, Defendants' Motion for Summary Judgment was submitted before
the close of discovery, and Defendants present a factual basis for
their request that the Court find for them as a matter of law only
as to Count II applied to Defendants Jarvis and Johnson and Count
III, Plaintiff's COBRA claim (doc. 13).  Because discovery was not
complete at the time the instant motion and the responsive
pleadings were filed, the parties could not present the Court with
a complete factual record upon which to decide a summary judgment
motion.  The Court thus construes Defendants' Motion for Summary
Judgment as a Motion to Dismiss and will analyze it accordingly.
The parties may certainly submit motions for summary judgment at

the close of discovery.

In contrast to a motion for summary judgment, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (2007). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009): a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id., quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). A motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are implausible. Courie, 577 F.3d at 629-30, citing Robert G. Bone, *Twombly, Pleading Rules, and the Regulation of Court Access*, 94 IOWA L. REV. 873, 887-90 (2009). A claim is facially plausible

6

when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the conduct alleged. <u>Iqbal</u>, 129 S.Ct. at 1949. Plausibility falls somewhere between probability and possibility. <u>Id</u>., <u>citing</u> <u>Twombly</u>, 550 U.S. at 557. As the Supreme Court explained,

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id</u>. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1106 (7th Cir. 1984), <u>quoting</u> <u>In Re: Plywood Antitrust Litigation</u>, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high
> standard; we recognize the policies behind Rule 8 and the
> concept of notice pleading. A plaintiff will not be
> thrown out of court for failing to plead facts in support
> of every arcane element of his claim. But when a
> complaint omits facts that, if they existed, would
> clearly dominate the case, it seems fair to assume that
> those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

## III. The Parties' Arguments and the Court's Discussion

### A. Counts I & II: FMLA

Defendants argue that Plaintiff's claims of FMLA retaliation cannot be properly lodged against Defendants Jarvis and Johnson because they are public agency employees (doc. 13). Defendants contend that Sixth Circuit law is "clear" that their status as public agency employees precludes any personal liability under the FMLA (Id., citing Mitchell v. Chapman, 343 F.3d 811 (6th Cir. 2003)). Defendants make no argument that Counts I & II as against Princeton should be dismissed (docs. 13, 20).

In response, Plaintiff engages in a thorough analysis of the state of the law with respect to public officials' personal liability in the FMLA context and argues that the plain language of the statute, the lack of distinction between public and private sector employees, and the fact that the FMLA refers to the FLSA to define "employer" and the FLSA permits public official personal liability all compel a finding that personal liability of public

officials under the FMLA is permitted (doc. 18). Plaintiff argues
that _Mitchell v. Chapman_, the Sixth Circuit case holding that
public sector employees cannot be held personally liable under the
FMLA, was wrongly decided and has been "roundly criticized" (_Id_.).
Indeed, Plaintiff points out that few other courts across the
country follow _Mitchell_'s reasoning and, having engaged in similar
statutory analysis, have emerged with the opposite conclusion
(_Id_.). In short, Plaintiff urges this Court to decide contrary to
_Mitchell_, arguing that this case is one of the rare times where a
district court should not follow controlling circuit authority
(_Id_.).

In reply, Defendants contend that _Mitchell_ controls this
Court's decision regarding the individual Defendants and that
Plaintiff can argue against _Mitchell_ on appeal (doc. 20).

The Court has thoroughly reviewed _Mitchell_ and can find
no basis upon which to distinguish the instant case such that a
finding of personal liability against the individual Defendants
could be permitted given _Mitchell_'s holding and rationale. While
the Court might have been persuaded by Plaintiff's arguments
regarding the issue of public official personal liability under the
FMLA in the first instance, the Court is bound by controlling
circuit law. _United States v. Veach_, 455 F.3d 628, 631 (6th Cir.
2006)(district court not at liberty to disregard holding of case
that is law of the circuit). Furthermore, the Court does not find

this to be an example of the "rarest cases" where a district court should break with clear circuit precedent. Plaintiff cites <u>Pratt v. United States Parole Comm'n</u>, 717 F.Supp. 382, 385 (E.D. N.C. 1989) for the proposition that district courts may permissibly not follow circuit precedent when there has been a substantial change in the judicial view of the issue at hand (doc. 18). <u>Pratt</u> involved a <u>habeas</u> review on Fourth Amendment grounds, and the district court found that developments in the judicial conception of the exclusionary rule in the preceding twelve years had changed so dramatically that Fourth Circuit precedent on the relevant issue could no longer reasonably inform the district court's decision. <u>Pratt</u>, 717 F.Supp. at 384-85.

Indeed, changes to the scope and applicability of the exclusionary rule have been dramatic over the years, and the district court in <u>Pratt</u> specifically cited to and relied on several Supreme Court decisions helping to shape those changes that the court found rendered the old Fourth Circuit cases non-binding. <u>Id</u>. at 385-86. No such sea change has occurred with respect to whether the FMLA's personal liability provisions apply to public sector employees. Instead, the Sixth Circuit's 2003 decision in <u>Mitchell</u> is a reasoned one, grounded in statutory analysis and informed by the views to the contrary in other circuits. <u>Mitchell v. Chapman</u>, 343 F.3d 811. This Court cannot simply ignore it on the basis that other courts in other circuits have engaged in the same process to

10

reach the opposite result. Therefore, the Court GRANTS Defendant's Motion with respect to Defendants Jarvis and Johnson as to Counts I & II. See Mitchell v. Chapman, 343 F.3d 811. Counts I & II with respect to Princeton, not being contested in the instant motion, remain.

### B. Count III: Intentional Infliction of Emotional Distress

#### 1. Defendant Princeton

Defendants contend that Princeton is statutorily immune from tort liability because no permissible exception to immunity exists (doc. 13, citing Ohio Rev. Code §§2744.01(F); 2744.02(B)). Absent such an exception, Defendants argue, Princeton is cloaked in the immunity afforded political subdivisions and Plaintiff's IIED claim should be dismissed (Id.). Plaintiff notes that Defendants failed to account for the statutory exception found in Ohio Rev. Code §2744.09, which provides that the tort immunity that political subdivisions normally enjoy does not apply when an employee brings a civil action against his employer for "any matter that arises out of the employment relationship between the employee and the political subdivision" or to a civil action by an employee against his employer relative to "hours, wages, conditions, or other terms of his employment" (Id., citing Ohio Rev. Code §2744.09(B)). Plaintiff contends that her claim of IIED against Princeton arises directly out of her employment relationship with Princeton and

11

argues that Princeton is therefore not immune from liability (<u>Id</u>.).
In reply, Defendants contend that intentional torts are not
exempted from the immunity afforded political subdivisions (doc.
20, <u>citing</u> <u>Zieber v. Robin Heffelinger</u>, 2009 Ohio 1227 (Ohio Ct.
App. 2009)).

Ohio Revised Code Chapter 2744 provides general immunity
from liability to political subdivisions. Absent that immunity, a
political subdivision would be liable in tort, just like any other
entity. When the cause of action arises from the employment
relationship, for example, Chapter 2744 "does not apply" and the
general grant of immunity ceases to exist. <u>See</u> Ohio Rev. Code §
2744.09(B)-(C). The Ohio Supreme Court has not expressly ruled on
whether an employer's intentional tort falls under the exceptions
to immunity provided in Section 2744.09 such that the Chapter 2744
immunity would not apply. The Ohio Supreme Court, however, has
confronted whether an employer's intentional tort "arises out of
the employment relationship" in the context of workers'
compensation litigation. There, the court held that intentional
torts committed by an employer against an employee <u>do</u> <u>not</u> arise out
of the victim's employment and always occur outside the employment
relationship. <u>Brady v. Safety-Kleen Corp.</u>, 576 N.E.2d 722, 729-30
(Ohio 1991). The <u>Brady</u> court explained that:

> [i]njuries resulting from an employer's intentional torts,
> even though committed at the workplace ... are totally
> unrelated to the fact of employment. When an employer
> intentionally harms his employee, that act effects a complete

> breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim. The employer has forfeited his status as such and all the attendant protections fall away.

Brady, 576 N.E.2d at 729, quoting Taylor v. Acad. Iron & Metal Co., 522 N.E.2d 464, 476 (1988)(Douglas, J., dissenting).

This Court typically applies the law of Ohio in accordance with the then-controlling decision of the Ohio Supreme Court. United States v. Anderson County, Tenn., 761 F.2d 1169, 1173 (6th Cir. 1985); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). However, where the state's highest court has not ruled, this Court must attempt to determine how that court would decide the issue. Bailey v. V. & O Press Co., 770 F.2d 601, 604 (6th Cir. 1985). The Court's determination is be informed by all relevant data, including Ohio Supreme Court rulings in analogous cases, applicable dicta in related cases, and the relevant decisions of Ohio appellate courts. Id. Further, where Ohio's highest court has not spoken on a precise issue, this Court may not disregard a decision of an Ohio appellate court on point, unless the Court is convinced by other persuasive data that the Ohio Supreme Court would decide otherwise. Puckett v. Tenn. Eastman Co., 889 F.2d 1481, 1485 (6th Cir. 1989).

Here, the weight of Ohio appellate authority holds that Brady's rationale applies to employer intentional torts outside the workers' compensation context and that Sections 2744.09(B) and (C)

cannot be read to mean that employer intentional torts arise out of the employment relationship or the terms and conditions thereof. See, e.g., Terry v. Ottawa County Bd. Of MRDD, 783 N.E.2d 959, 964-65 (Ohio Ct. App. 2002); Chase v. Brooklyn City Sch. Dist., 749 N.E.2d 798, 806 (Ohio Ct. App. 2001); Engleman v. Cincinnati Bd. Of Educ., No. C-000597, 2001 WL 705575, at *4-5, 2001 Ohio App. LEXIS 2728, at *12-15 (Ohio App. 1st Dist. June 22, 2001); Ventura v. City of Independence, No. 72526, 1998 WL 230429, at *6-8, 1998 Ohio App. LEXIS 2093, at *20-23 (Ohio App. 8th Dist. May 7, 1998); Ellithorp v. Barberton City Sch. Dist. Bd. Of Educ., No. 18029, 1997 WL 416333, at *3, 1997 Ohio App. LEXIS 3053, at *8 (Ohio App. 9th Dist. July 9, 1997). Plaintiff does cite to one Ohio appellate case holding that, under § 2744.09, a municipality is not immune to an employer intentional tort (doc. 18, citing Marcum v. Rice, No. 98AP-717, 1999 WL 513813, at *6-7, 1999 Ohio App. LEXIS 3365, at *19-22 (Ohio App. 10th Dist. July 20, 1999)). However, Marcum fails to mention Brady and is clearly an outlier among Ohio appellate decisions.

Therefore, on the reasoning of Brady and the weight of Ohio appellate precedent applying it in the Chapter 2744 immunity context, the Court determines that the Ohio Supreme Court would conclude that Section 2744.09 does not except employer intentional torts from political subdivision immunity. Thus, because Princeton retains the immunity granted to it by Chapter 2744 of the Ohio

14

Revised Code, the Court GRANTS Defendants' Motion with respect to Count III as to Defendant Princeton.

## 2. Defendants Jarvis and Johnson

Defendants contend that, pursuant to Chapter 2744 of the Ohio Revised Code, the individual Defendants, Jarvis and Johnson, are immune from tort claims as employees of the political subdivision Princeton and that none of the exceptions provided for in Ohio Rev. Code §2744.03 applies (doc. 13). Plaintiff contends that she has sufficiently alleged an IIED claim against Jarvis and Johnson such that they have fair notice of what the claim is and the grounds upon which it rests, thus satisfying the liberal pleading standard of Federal Rule of Procedure 8 (doc. 18, citing Fed. R. Civ. P. 8; Tackett v. M&G Polymers, USA, LLC, 561 F.3d 478 (6th Cir. 2009)). Plaintiff argues that any contention that Jarvis and Johnson have immunity because none of the exceptions of Section 2744.03 applies requires a determination that they did not behave recklessly, maliciously or in bad faith and that such determination is premature because discovery has not been completed in this matter (Id., citing Ohio Rev. Code §2744.03(6)(inter alia, if employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner, the immunity normally afforded employees of political subdivisions does not apply)).

The Court need not address Defendants' immunity argument, however, because, for the following reasons, the Court finds that Plaintiff has failed to allege conduct sufficient to support a

claim of IIED against Jarvis and Johnson.

To state a claim for intentional infliction of emotional distress in Ohio, a plaintiff must allege that: (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. Ekunsumi v. Cincinnati Restoration, Inc., 698 N.E.2d 503, 506 (Ohio Ct. App. 1997). With regard to the "outrageous and extreme conduct" element, the Ohio Supreme Court explained:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.... There is no occasion for the law to intervene in every case where some one's feelings are hurt.

Yeager v. Local Union 20, 453 N.E.2d 666, 671 (Ohio 1983)(internal

quotation marks and citation omitted).

Here, the issue is whether the conduct Plaintiff has alleged to support her claim of IIED meets the high standard of extreme and outrageous conduct compensable under Ohio law. A court does not commit legal error under Ohio law when it grants a defendant's motion to dismiss a claim of IIED because the plaintiff fails to allege outrageous and extreme conduct. <u>See</u>, <u>e.g.</u>, <u>Springer v. Fitton Ctr. for Creative Arts</u>, 2005 WL 1670788, at *5-6 (Ohio App. 12th Dist. July 18, 2005)(affirming trial court's order dismissing IIED claim and holding that the plaintiff's allegations, "even if proved true, would not amount to conduct that was so extreme and outrageous that it went beyond all possible bounds of decency; nor do they constitute, as a matter of law, conduct that is completely intolerable in a civilized community.").

The standard for extreme and outrageous conduct stated in <u>Yeager</u> is a difficult one to satisfy. In <u>Reamsnyder v. Jaskolski</u>,462 N.E.2d 392, 393 (Ohio 1984) the court held that a defendant who threatened to "tear [the plaintiff's] face off" was engaged in conduct that was extreme and outrageous enough to meet the <u>Yeager</u> standard and overcome the motion to dismiss. In <u>Miller v. Currie</u>, 50 F.3d 373, 378 (6th Cir. 1995), the plaintiff survived the nursing home defendant's motion to dismiss where the nursing home was alleged to have attempted to hide, on three separate occasions, a ninety-eight-year-old patient from her daughter and subsequently caused the daughter to be arrested. In contrast, the

court in Sullivan v. Coca-Cola Bottling Co. of Ohio/Kentucky, 2001 WL 1681149 (S.D. Ohio 2001) granted the defendant's motion to dismiss the plaintiff's IIED claim, which was premised on her unjust suspension, the defendant's refusal to pay plaintiff normal pay increase and the plaintiff's termination without just cause, finding that the plaintiff had failed to allege conduct that met the extreme and outrageous conduct. See also Hawley v. Presser Industries, Inc., 737 F.Supp. 445, 469 (S.D. Ohio 1990)(unjustified termination insufficiently extreme and outrageous conduct), rev'd in part on other grounds, Humphrey's v. Bellaire Corp., 966 F.2d 1037 (6th Cir. 1992).

While Plaintiff is correct that under the liberal pleading standard of Rule 8 she need not allege "specific facts," she must nonetheless provide sufficient factual matter that, accepted as true, provides a facially plausible claim for relief. See Iqbal, 129 S.Ct. at 1949. On the pleadings here, Plaintiff has failed to meet that burden. The Court finds that, assuming Plaintiff's allegations to be true, Jarvis and Johnson's conduct as currently pled, does not meet the standard for "extreme and outrageous" conduct under Ohio law. The Court therefore GRANTS the Defendants' Motion with respect to Count III. However, the Court gives Plaintiff leave to amend her Complaint within thirty days from the filing of this Order and Opinion, if appropriate, in order to present factual allegations to support this cause of action.

C.   Count IV: COBRA

COBRA was an amendment to both ERISA, the Employee Retirement Income Security Act, 29 U.S.C 18 et seq., and the PHSA, the Public Health Services Act, 42 U.S.C. 6A et seq. See Pub L. No. 99-272, §§ 10002 and 10003, 100 Stat. 227 (1986)(adding the COBRA coverage provisions as Part 6 at the end of subtitle B of title I of ERISA and as Subchapter XX of the PHSA). Plaintiff brings her COBRA claim under ERISA (doc. 10), and Plaintiff and Defendants exclusively cite to ERISA provisions and case law in the pleadings (docs. 13, 18, 20). However, ERISA explicitly does not apply to plans established or maintained by any state or political subdivision thereof. 29 U.S.C. §1003(b)(1)("The provisions of [ERISA] shall not apply to any employee benefit plan if...(1) such plan is a governmental plan (as defined in section 1002(32) of this title)"); 29 U.S.C. § 1002(32)("The term 'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing...."). As Defendants point out in their FMLA argument, Princeton is a political subdivision of the state of Ohio (doc. 13, citing to definition of "public agency," which is "the Government of the United States; the government of a State or political subdivision thereof; any agency of...a state, or a political subdivision of a State...." 29 U.S.C. §203(x)). The PHSA, on the other hand, only applies to such government health plans. 42 U.S.C. §300bb-1 et seq. Therefore, Plaintiff's claims

brought under ERISA against Defendants are not well-pled, and the PHSA would be the appropriate statute under which Plaintiff could bring her claim.

Even if permitted to do so, the Court will not construe Plaintiff's Complaint to state a claim under the PHSA because significant differences exist between ERISA and the PHSA with respect to relief. While the COBRA amendments inserted into ERISA and the PHSA contain nearly the same requirements with respect to continuation coverage and notification, ERISA provides broader relief to aggrieved private employees than the PHSA provides to public employees. See Brett v. Jefferson County, Ga., 123 F.3d 1429, 1435 (11th Cir. 1997); Mansfield v. Chicago Park Dist. Group Plan, 946 F.Supp. 586, 591 (N.D. Ill. 1996). ERISA not only provides for "appropriate equitable relief," 29 U.S.C. § 1132(a)(3), but also explicitly provides for the recovery of fines and attorney's fees, 29 U.S.C. §§ 1132(c) and (g). The PHSA, on the other hand, contains no provisions regarding the recovery of fines or attorney's fees and instead limits relief to "appropriate equitable relief." 29 U.S.C. § 1003(b)(1). Equitable relief under the PHSA is narrowly construed and is limited to those remedies traditionally available at equity such as injunction, mandamus, and equitable restitution. Brett, 123 F.3d at 1435, n.14; Watson v. Cleveland Mun. School Dist., 409 F.Supp.2d 892, 897 (N.D. Ohio 2005), citing Thomas v. Town of Hammonton, 351 F.3d 108, n.5 (3rd Cir. 2003). Any claim under the PHSA, therefore, must seek

equitable relief, not the ERISA-based statutory damages Plaintiff seeks.

Consequently, the Court dismisses Plaintiff's COBRA claims, Count VI and gives leave to Plaintiff to refile, if appropriate, under the PHSA.

### D. Counts V & VI: FLSA and Ohio compensation law

The FLSA requires employers to pay their employees time-and-a-half for any work performed in excess of forty hours per week. Acs v. Detroit Edison Co., 444 F.3d 763, 764-65 (6th Cir. 2006), citing 29 U.S.C. §§ 201 et seq. The relevant Ohio statute, Ohio Rev. Code § 4111.03(A), contains requirements identical to those in the FLSA and incorporates the procedures and standards contained therein. See Briscoe v. Columbus Metropolitan Area Comm. Action Org., 1982 WL 4028 at *3 (Ohio App. Mar. 9, 1982)("By virtue of R.C. 4111.03(A), Ohio defers to federal regulations and case law for the determination of eligibility for overtime compensation."). However, "bona fide executive, administrative, or professional employees" are exempt from these overtime pay requirements. Auer v. Robbins, 519 U.S. 452, 454 (1997), quoting 29 U.S.C. §213(a)(1).

Plaintiff seeks compensation under both the FLSA and its Ohio counterpart statute for overtime she worked in January and February 2008 (doc. 10). Defendants contend that Plaintiff was an exempt employee and as such was not entitled to overtime under either statute (doc. 13). In addition, Defendants assert that individual employees like Jarvis and Johnson cannot be held

personally liable under either statute (Id.). Plaintiff contends that she does not meet the standard for an exempt employee because her primary duty was not the management of the Treasurer's office and that district courts within this circuit have come to different results with respect to individual liability under the FLSA and the relevant Ohio law (doc. 18).

Clearly, the issue of whether Plaintiff was an exempt or non-exempt employee is very fact-specific. To appropriately address the merits of this claim, therefore, the Court will need to rely on the factual record, which, as noted above, is incomplete at this stage. In her pleadings, Plaintiff has alleged facts sufficient to support a plausible claim for compensation under both the FLSA and Ohio's counterpart statute in that she alleges to have worked in excess of forty hours per week without the requisite compensation. In addition, because the law in this circuit is not uniform regarding individual liability under the FLSA, the Court cannot say that Plaintiff has not presented a plausible claim against Jarvis and Johnson. Compare Fraternal Order of Police Barkley Lodge # 60, Inc. v. Fletcher, 618 F.Supp.2d 712 (W.D. Ky. 2008)(holding that employees of public agencies may be held individually liable for violations of the FLSA) with Millington v. Morrow County Bd. of Comm'rs, 2007 WL 2908817 at *14 (S.D. Ohio Oct. 4, 2007)("The fact that Congress indicated an intent not to hold individual public agency officials liable under a similar definition in the FMLA suggests that Congress likewise never

intended to impose individual liability on public employees under the FLSA"). Therefore, Plaintiff's Counts V and VI survive Defendants' Motion.

### E. Counts VII and VIII: Punitive damages and attorneys' fees

In her Complaint, Plaintiff sought punitive damages and attorneys' fees under both COBRA and the FMLA (doc. 10). In her Response to Defendants' Motion, however, Plaintiff concedes that she cannot recover punitive damages against Princeton on any of her claims or against any of the Defendants on her FMLA claim (doc. 18). She contends, however, that she is entitled to punitive damages from Jarvis and Johnson under COBRA and her IIED claim (<u>Id</u>.). The Court has dismissed both of these claims. Therefore, the Court GRANTS Defendants' Motion with respect to Counts VII and VIII.

## IV. Conclusion

For the foregoing reasons, the Court construes Defendants' Motion as a motion to dismiss and GRANTS the motion with respect to Defendants Jarvis and Johnson as to Counts I & II; GRANTS the motion with respect to all Defendants as to Count III; GRANTS the motion with respect to all Defendants as to Count IV; DENIES the motion with respect to all Defendants as to Counts V and VI; and GRANTS the motion with respect to all Defendants as to Counts VII and VIII. Therefore, Counts I & II (the FMLA retaliation and interference claims) as to Princeton and Counts V

and VI (the FLSA and Ohio law claims) as to all Defendants remain. As stated above, the parties are given leave to file motions for summary judgment at the close of discovery. In addition, leave is given to Plaintiff to amend her Complaint within thirty days from the filing of this Opinion and Order to make the necessary factual allegations—not conclusory statements—to support the causes of action this Court has dismissed based on insufficient factual support. Further, Plaintiff may amend her Complaint in that time frame in order to bring her COBRA claims under the PHSA, if appropriate.

The Court vacated the scheduling order in this case on February 2, 2010 (doc. 28). Because some of Plaintiff's claims have survived this motion, the Court SETS the following schedule as to those claims: discovery shall be completed by June 1, 2010; any dispositive motions shall be filed by July 2, 2010; a final pretrial conference shall be held on September 2, 2010 at 10:00 A.M., with a three-day jury trial to begin on October 5, 2010 at 9:30 A.M.

SO ORDERED.

Dated: February 17, 2010      /s/ S. Arthur Spiegel

S. Arthur Spiegel
United States Senior District Judge