UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHARLENE KOLLSTEDT,           :        NO. 1:08-CV-00822
                              :
        Plaintiff,            :
    v.                        :        **OPINION & ORDER**
                              :
                              :
PRINCETON CITY SCHOOLS BOARD  :
OF EDUCATION, et al.,         :
                              :
        Defendants.           :


        This matter is before the Court on Defendants' Motion for
Summary Judgment (doc. 61), Plaintiff's Response in Opposition
(doc. 69), and Defendants' Reply in support thereof (doc. 70). For
the reasons indicated herein, the Court GRANTS Defendants' Motion.

**I.  Background**

        Plaintiff, a former employee of Defendant Princeton City
Schools Board of Education ("Princeton"), worked as a Payroll
Supervisor for Princeton from 1999 through July of 2008 (docs. 61,
69). Plaintiff's immediate supervisor was Defendant Tracy Jarvis,
the Chief Financial Officer for Princeton, and Defendant Teresa
Johnson, also an immediate supervisor of Plaintiff, was the
Assistant Treasurer for Princeton (Id.). Plaintiff's job included
completing or supervising the completion of nearly all payroll
responsibilities (Id.).

        Beginning on August 3, 2007, Plaintiff took leave under
the Family Medical Leave Act (the "FMLA") (Id.). When Plaintiff
returned from leave on September 24, 2007, she found that employee

benefits reconciliations had not been completed in her absence (Id.). To complete these reconciliations, she claims to have worked approximately fifty additional hours in January 2008 and seventy additional hours in February 2008. She did not receive compensation for that additional time worked.

On January 4, 2008, Plaintiff received a negative performance evaluation, and on February 29, 2008, she was given a letter indicating that her contract with Princeton would not be renewed (Id.). Among the reasons cited for the non-renewal were her lack of interest in being a manager, ongoing errors resulting in district-wide frustration and lack of trust that payroll would be completed accurately, her lack of management ability, and the fact that "payroll as a whole has never been reconciled" (doc. 62). Plaintiff followed the various appeals options available, to no avail, and her employment with Princeton ended on July 30, 2008 (Id.).

Plaintiff filed this action on November 21, 2008, with an amended complaint filed on April 16, 2009, alleging eight claims (Id.). The Court granted in part Defendants' earlier motion for summary judgment (which the Court construed as a motion to dismiss), which left only Counts I & II (the FMLA retaliation and interference claims) as to Princeton and Counts V and VI (the FLSA and Ohio law claims) as to all Defendants remaining. Defendants now move for summary judgment on these remaining claims.

2

## II.  The Applicable Standard

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Fatton v. Bearden, 8 F.3d. 343, 346 (6th Cir. 1993), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v.

3

_Catrett_, 477 U.S. 317, 323 (1986); _see also_ _LaPointe_, 8 F.3d at
378; _Garino v. Brookfield Township Trustees_, 980 F.2d 399, 405
(6th Cir. 1982); _Street v. J.C.D. Bradford & Co._, 886 F.2d 1472,
1479 (6th Cir. 1989).  The movant may do so by merely identifying
that the non-moving party lacks evidence to support an essential
element of its case. _See_ _Barnhart v. Pickrel, Shaeffer & Ebeling
Co. L.P.A._, 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after
completion of sufficient discovery, must submit evidence in support
of any material element of a claim or defense at issue in the
motion on which it would bear the burden of proof at trial, even if
the moving party has not submitted evidence to negate the existence
of that material fact. _See_ _Celotex_, 477 U.S. at 317; _Anderson v.
Liberty Lobby, Inc._, 477 U.S. 242 (1986).  As the "requirement [of
the Rule] is that there be no genuine issue of _material_ fact," an
"alleged factual dispute between the parties" as to some ancillary
matter "will not defeat an otherwise properly supported motion for
summary judgment." _Anderson_, 477 U.S. at 247-248 (emphasis added);
_see generally_ _Booker v. Brown & Williamson Tobacco Co., Inc._, 879
F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere
existence of a scintilla of evidence in support of the [non-
movant's] position will be insufficient; there must be evidence on
which the jury could reasonably find for the [non-movant]."
_Anderson_, 477 U.S. at 252; _see also_ _Gregory v. Hunt_, 24 F.3d 781,

4

784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating

that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the court to demonstrate that summary judgment is appropriate.  See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**III. The Parties' Arguments and the Court's Discussion**

**A.   Counts I & II: FMLA**

The FMLA entitles an "eligible employee" to up to twelve weeks of leave per year if the employee has a "serious health condition" that prevents the employee from performing the functions of her job. 29 U.S.C. § 2612(a)(1)(D); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).  An employer may not discriminate or retaliate against an employee for taking FMLA leave. 29 U.S.C. § 2615(a)(2).  In particular, an employer is prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions."  29 C.F.R. § 825.220(c); Arban v. West Publ'g Corp., 345 F.3d 390, 403 (6th Cir. 2003).  There are two theories of recovery under the FMLA: an interference (or entitlement) theory and a retaliation (or discrimination) theory. See Grace v. USCAR, 521 F.3d 655, 669 (6th Cir. 2008).  Plaintiff brings claims under both theories: Count I is a retaliation claim, and Count II is an interference claim.

**1.   Count I: Retaliation**

6

Defendant Princeton argues that Plaintiff's FMLA retaliation claim (Count I) fails as a matter of law because Plaintiff has not shown, by a preponderance of the evidence, that her contract was not renewed in retaliation for her taking FMLA leave (doc. 61).  Defendant notes that it presented legitimate, non-discriminatory reasons for the decision to not renew Plaintiff's contract, including Plaintiff's expressed lack of desire to be a manager and the "district-wide disappointment, frustration, and lack of trust for their payroll being processed correctly, and her lack of management ability" (<u>Id</u>.).  Defendant further notes that many of these concerns were expressed and documented before Plaintiff took FMLA leave (<u>Id</u>.).

In response, Plaintiff claims for the first time that her FMLA count is brought as a mixed-motive claim, which means that, rather than the burden shifting to her to show by a preponderance of the evidence that her contract non-renewal was done in retaliation for her taking FMLA leave, Defendant Princeton must show that it would have taken the same action absent the impermissible motive (doc. 69, citing <u>Hunter v. Valley View Local Schools</u>, 579 F.3d 688, 692 (6th Cir. 2009)).  Plaintiff contends that Defendant cannot meet that burden because the other reasons given for her non-renewal were issues that had been noted in prior evaluations, and the only new issue was her failure to conduct

7

reconciliations[1] during her FMLA time (Id.).  This, she contends, raises a genuine issue of fact with respect to the actual reason for her contract non-renewal.

Plaintiff's attempt to characterize her claim as a mixed motive claim in order to avoid the McDonnell Douglas burden-shifting inherent to a claim–such as the one described in her complaint–of pure retaliation is not well taken.[2]  If Plaintiff truly intended to assert a mixed-motive claim, she should have styled her complaint accordingly so that Defendant would have been on notice that it would need to ultimately answer the question of

_____

[1]  "Reconciliations" refers to a process of reconciling the invoices submitted to Princeton from the various dental, life and health insurance companies that provide benefits to Princeton employees.  The companies submit invoices for a certain monthly payment due, and Plaintiff would reconcile what Princeton had deducted for those benefits from payroll with the invoice amount being charged from the insurance company (doc. 62).

[2]  In a pure, single-motive retaliation case, the plaintiff must first establish a prima facie case of retaliation, then, if the defendant then asserts a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must, by a preponderance of the evidence, show that the defendant's reason was pretext for retaliation.  See, e.g., Skrjanc v. Great Lakes Power Serv., 272 F.3d 309, 314 (6th Cir. 2001), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  In contrast, in a mixed-motive retaliation case, the plaintiff must first show that she was retaliated against because of her use of FMLA, then the burden shifts to the defendant to show, by a preponderance of the evidence, that it would have made the same decision absent the impermissible motive.  Hunter, 579 F.3d at 692.  In the past, courts have mistakenly applied the pretext analysis to cases involving circumstantial evidence and the same-decision analysis to those involving direct evidence.  Id., fn. 2.  However, Hunter notes that "the standard depends not on the type of evidence presented (direct versus circumstantial), but on the type of claim brought (single-motive versus mixed-motive)." Id.

whether it would have not renewed Plaintiff's contract absent a retaliatory motive. As Plaintiff notes, the concept of a mixed motive FMLA claim is not new, so it is not as if Plaintiff did not have the opportunity to style her complaint that way.

However, this last-minute attempt to avoid the burden of proving pretext does not serve Plaintiff because Plaintiff has not established in the first instance that the contract non-renewal was motivated–either wholly or in part–by an impermissible motive. As noted above, in order to shift the burden to Defendant to show that it would have not renewed Plaintiff's contract absent an impermissible motive, Plaintiff must first establish that Defendant had an impermissible motive. See Hunter, 579 F.3d at 692. This, she has not done.

Plaintiff relies on the following statement from Defendant Johnson's recommendation that Plaintiff's contract not be renewed to prove that Defendant retaliated against her for taking FMLA leave:

> The payroll as a whole has never been reconciled and even with repeated demands it still was never done or at least a system derived to keep making improvements in this area. This is the main reason that errors have not been duly noted and rectified in a timely manner or avoided altogether. While checking the system data for the conversion, spreadsheets maintained by Sharlene were inaccurate on total amounts causing undue delay and research in what was really non-issues [sic] (doc. 62-7).

Plaintiff argues that this mention of the lack of reconciliation of the payroll is evidence that Plaintiff was retaliated against for

taking FMLA time because, Plaintiff contends, the reconciliation should have been completed by other people while she was on leave and, instead, she was "forced" to complete the reconciliations upon her return from leave in addition to her daily duties and other tasks that required her immediate attention (doc. 69).  Further, Plaintiff contends that all of her evaluations were identical with respect to the other problems identified in her final evaluation, except for the reconciliation issue (Id.).  Therefore, Plaintiff argues, those other problems are "of no consequence" because they were not so significant as to justify Plaintiff's non-renewal until after she took FMLA leave (Id.).

      The Court concludes that no reasonable fact-finder could infer from the inclusion of the above-mentioned statement regarding the reconciliations that Defendant retaliated against Plaintiff for her use of FMLA leave.  Plaintiff took FMLA leave beginning August 3, 2007 and returned to work on September 24, 2007 (doc. 62).  She testified that she did not complete the August reconciliation before taking her leave and that, upon her return, she realized that neither the August nor the September reconciliation had been completed in her absence (Id.).  She also testified that she was the only person who performed the reconciliations for the entities she covered and that she never had a conversation with either Defendant Johnson or Jarvis about the fact that the reconciliations had not been done in her absence (Id.).  Plaintiff did not complete

the reconciliations for August, September, October, November, December, or January until January and February of 2008, when she did them all at once by working from home (<u>Id</u>.).

Defendant Johnson, meanwhile, testified that she discovered in Plaintiff's absence that the reconciliations that Plaintiff had conducted prior to her leave were not done correctly (doc. 66). In fact, she noted that she assigned someone to go back and redo the reconciliations from as far back as 2007 and that, even working diligently with a representative from the insurance company, they could not make sense of the reconciliations Plaintiff had done before she left (<u>Id</u>.). She further testified that she had assigned one of Plaintiff's clerks to conduct the reconciliations in Plaintiff's absence but that too much clean-up work had to be done first, which prevented them from getting done before Plaintiff returned (<u>Id</u>.). It was her expectation that Plaintiff would conduct the outstanding reconciliations when she returned (<u>Id</u>.).

Plaintiff has presented no evidence that creates a genuine issue of fact that the notation about her failure to conduct reconciliations accurately was made in retaliation for her taking FMLA leave. On the contrary, the uncontroverted evidence shows that Plaintiff had not been doing the reconciliations correctly for some time prior to her leave. The statement regarding the reconciliations contained in the non-renewal recommendation does not even reference the fact that the

11

reconciliations were not done in a timely manner upon her return, but, instead, notes that "[t]he payroll as a whole has never been reconciled and even with repeated demands it still was never done or at least a system derived to keep making improvements in this area." Plaintiff's attempt to tie that to her FMLA leave simply has no support in the record and would require an inferential leap of unreasonable proportions.

The Court thus finds that no reasonable jury could find that Plaintiff was retaliated against for taking FMLA leave.

### 2.  Count II: FMLA interference

Plaintiff claims that Defendant Princeton interfered with her FMLA rights by "forcing her to complete work that should have been completed by [others] in her absence, forcing her to work overtime to complete such work, and negatively evaluating her, and ultimately terminating her, for failing to complete such work" (doc. 10). Defendant Princeton notes that in order to establish an interference claim, Plaintiff must show that she was an eligible employee; that Princeton was an employer under the FMLA; that Plaintiff was entitled to FMLA leave; that she gave notice of her intention to take FMLA leave; and that Princeton denied her the FMLA benefits to which she was entitled (doc. 61, citing Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005)). Defendant contends that Plaintiff has adduced no evidence showing that Princeton denied her FMLA benefits and that, on the contrary, the

record shows that she received all the benefits to which she was entitled when she was reinstated to her position upon her return from leave on September 24, 2007 (Id.).

Plaintiff contends that Defendant interfered with her use of FMLA leave by discouraging her from taking such leave "by failing to ensure that each of her duties were [sic] completed in her absence" (doc. 69). As support for this contention that an employer's failure to ensure that the employee's duties are performed during her FMLA absence constitutes FMLA interference, Plaintiff cites the Court to Kumar v. UPMC Physician Servs., 2006 U.S. Dist. LEXIS 44050, 2006 WL 1805691 (W.D. Pa., June 28, 2006) (doc. 69).

Plaintiff's reliance on Kumar is misplaced, and the record simply does not support an interference claim. In Kumar, the plaintiff argued that her FMLA rights were interfered with because the defendant did not reduce her workload during a time of intermittent leave and instructed her to complete her work before taking additional leave. Id. at *7. The court noted that the plaintiff had provided no legal support for her contention that an employer should adjust an employee's workload when an employee goes on reduced hours and found that, in any event, the plaintiff was not overburdened by work when she returned. Id. at *8. Critical to the court's decision was the fact that the plaintiff was never denied leave and that every time she returned from leave she

returned to her same job and was never hassled about her leave. Id. at 7.

Here, the record clearly supports a finding that Plaintiff's leave request was approved and that she was reinstated to her same job upon her return. No evidence in the record supports a finding that she was hassled about having taken leave upon her return. Similar to the plaintiff in Kumar, Plaintiff here provides no legal support for the contention that an employer must ensure that an employee's duties must be performed by others in the employee's absence. Even if there were support for such a contention, the record shows that Defendant Princeton did, in fact, assign three different employees to complete her tasks, including the reconciliations, but the prior reconciliations were in such bad shape that the outstanding invoice could not be reconciled during her absence. And, although Plaintiff's testimony indicates that she was overwhelmed upon her return, the record does not support an inference that she was overwhelmed because of the reconciliations. On the contrary, her own testimony indicates that she was overwhelmed largely because the union and administration had come to a settlement, which significantly impacted the work of payroll (doc. 62).

In short, Plaintiff has adduced no evidence and no legal support for her claim that her FMLA rights were interfered with by Defendant Princeton failing to ensure that her duties were

14

completed in her absence. As Defendant notes, the FMLA does not entitle employees to return from leave with "a clean desk and an empty inbox" (doc. 61). Instead, the FMLA requires that an employer not interfere with an employee's rights by, for example, changing the essential functions of the job in order to preclude the taking of leave, reducing hours available in order to avoid employee eligibility, or not paying benefits the employee would otherwise be entitled to. See 29 C.F.R. § 825.220(b). No reasonable reading of the record could support a finding that Defendant interfered with Plaintiff's FMLA rights. The Court thus finds summary judgment for Defendant on Count II appropriate.

**B.   Counts V & VI: FLSA and Ohio compensation law**

The FLSA requires employers to pay their employees time-and-a-half for any work performed in excess of forty hours per week. Acs v. Detroit Edison Co., 444 F.3d 763, 764-65 (6th Cir. 2006), citing 29 U.S.C. §§ 201 et seq. The relevant Ohio statute, Ohio Rev. Code § 4111.03(A), contains requirements identical to those in the FLSA and incorporates the procedures and standards contained therein. See Briscoe v. Columbus Metropolitan Area Comm. Action Org., 1982 WL 4028 at *3 (Ohio App. Mar. 9, 1982)("By virtue of R.C. 4111.03(A), Ohio defers to federal regulations and case law for the determination of eligibility for overtime compensation."). However, "bona fide executive, administrative, or professional employees" are exempt from these overtime pay requirements. Auer v. Robbins, 519 U.S. 452, 454 (1997), quoting 29 U.S.C. §213(a)(1).

15

Plaintiff seeks compensation under both the FLSA and its Ohio counterpart statute for overtime she worked in January and February 2008 (doc. 10). Defendants contend that Plaintiff was an exempt employee and as such was not entitled to overtime under either statute (doc. 61). Plaintiff contends that she does not meet the standard for an exempt employee because her primary duties did not involve the exercise of discretion and independent judgment with respect to matters of significance (doc. 69).

To establish the overtime exception on summary judgment, Defendants must show by a preponderance of the evidence that Plaintiff (1) was salaried at a rate of not less than $455 per week; (2) primarily performed office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) as a primary duty, exercised discretion and independent judgment with respect to matters of significance. Renfro v. Indiana Michigan Power Co., 497 F.3d 573, 576, fn. 1 (6th Cir. 2007), quoting 29 C.F.R. § 541.200(a). Here, only the third factor is disputed.

The Court finds no genuine issue of fact as to whether Plaintiff was an exempt employee. The "exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Factors to consider when determining whether discretion and independent judgment are exercised include, but are

16

not limited to:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances. 29 C.F.R. § 541.202(b).

The regulations further note that the exercise of discretion and independent judgment implies the authority to make an independent choice, but final, unlimited authority with no review is not required. 29 C.F.R. § 541.202(c). Indeed, the regulations explicitly recognize that the fact that an employee's decision may be subject to review and revised or reversed does not mean that the employee is not exercising discretion and independent judgment. Id. In addition, "[t]he exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a 'statistician.'" Id.

17

To support their contention that Plaintiff was an exempt employee, Defendants point to the fact that Plaintiff's own description of her job duties included maintaining information, establishing and maintaining several databases, investigating health coverage issues, troubleshooting American Fidelity issues, tracking files for employees with exceptions status, setting up benefits and salary for new hires, and creating and/or submitting information to federal and state agencies (doc. 70, citing to Plaintiff's deposition and attached exhibits).  In addition, Defendants note that Plaintiff was responsible for the supervision and discipline of two data processing clerks, who were responsible for inputting data and who were hourly, non-exempt employees (Id.). Also, Defendants point the Court to record evidence showing that Plaintiff was responsible for implementing a software conversion, which required analysis and problem-solving as well as being the liaison between Princeton and the software company (Id., citing to Johnson's deposition).  Further, Defendants note that Plaintiff's supervisor testified that she expected Plaintiff to stay abreast of changes in the tax law, determine which duties should be delegated to her clerks, train and direct her clerks and enroll in management courses (Id.).

To refute Defendants' assertion that she was an exempt employee, Plaintiff, without citation to the record, claims that she did not have authority to waive or deviate from policies and procedures without approval from Defendants Jarvis or Johnson (doc.

69).  In addition, she claims that the evaluations she conducted of her clerks had to be approved by Defendants Jarvis and Johnson; that she did not have authority to unilaterally approve any overtime worked by her clerks; and that she was not able to discipline her clerks as she felt appropriate because Defendant Johnson admonished her in her evaluation that the clerks should be disciplined more often (Id.).  Plaintiff likens her case to Frisby v. Keith D. Weiner & Assoc. Co., LPA, 2010 U.S. Dist. LEXIS 39185, 2010 WL 1630107 (N.D. Ohio, April 21, 2010).  There, the court found that "conflicting evidence" precluded summary judgment for the defendants, even if the evidence created a strong inference that the plaintiff was an exempt employee.  Frisby, *6.  The evidence creating the conflict was the plaintiff's affidavit. (Id.).

Frisby does not help Plaintiff because, unlike the Frisby plaintiff, Plaintiff cannot show conflicting evidence because she points to no evidence at all that actually supports her position. The Court has, of course, thoroughly reviewed the record and finds that not only is Plaintiff's affidavit silent as to the issues involved in the exempt-employee analysis, but her deposition testimony actually supports Defendants' position.  For example, Plaintiff claims that the evaluations she conducted of her clerks had to be approved by Defendants Jarvis and Johnson.  However, the following exchange from pages 38 and 39 of Plaintiff's deposition demonstrates otherwise:

```
Q: Did you oversee your clerks?
A: Yes.
Q: And regardless of whether you did it or not, you had the
   ability to discipline your clerks?
A: Yes.
Q: And you didn't have to evaluate your clerks, did you?
A: Yes, I did.
Q: You did. How often would you do that?
A: Once a year.
Q: Once a year. And it would be a written document which you
   would meet with your clerk and signed?
A: There was usually a format that HR wanted us to follow, it
   was like a point system. And we would grade them
   accordingly. And then if I had any other information I
   wanted to add to that, I would supply a sheet after the
   evaluation.
Q: And would you meet with the clerk after you did the
   evaluation-
A: Yes, I would
Q: -to go over your points or your evaluation?
A: Yes, I would.
Q: And then would they get a copy of the evaluation?
A: Yes, they would.
Q: And HR would get the other copy?
A: Correct.
```

Nowhere here, nor in any other section of Plaintiff's deposition, is there evidence that Defendants Jarvis and Johnson had to first approve the evaluations Plaintiff conducted.  On the contrary, Plaintiff's testimony clearly indicates that she crafted the evaluations according to the format supplied by human resources, she presented the evaluations to her clerks, and then they were filed with human resources.  Defendant Jarvis testified to the full process, saying that a recommendation on the continued employment of those evaluated would be based on the evaluations conducted and that, while she had the authority to reject a recommendation regarding employment conducted by Plaintiff, the

final authority over all personnel decisions rested with the Board
(doc. 65).  The fact that final approval rested with the Board in
no way negates the evidence that Plaintiff used her discretion and
independent judgment in drafting and presenting the evaluations of
her employees.

Similarly, Plaintiff asserts that she did not have
authority to unilaterally approve any overtime worked by her
clerks, but this assertion is belied by her own testimony on pages
94 and 95 of her deposition:

> Q: Did you have more work when you reported to [Defendant
>    Johnson] than when you reported to [Defendant Johnson's
>    predecessor]?
> A: The only difference was we were not supposed to have any
>    overtime.  So some of this stuff that I might have been
>    able to warrant for overtime for my girls I had to take
>    it and do it myself.
> A: When did that start?
> Q: I don't know the exact date, but I'm just saying that my
>    girls put in 40 hours and that was it. They were done.
>    So as far as delegating anything else to them, that would
>    have relieved me of my stuff. I couldn't.
> A: So are you saying that [Defendant Johnson's predecessor]
>    allowed you to pay overtime to your staff?
> A: Yes.
> Q: To approve overtime?
> A: Yes.
> Q: That's something that you would do?
> A: Well, we didn't really even ask for approval. If something
>    needed to be done, we worked until we got it done. That's
>    just the way it was.
> Q: Did your staff submit their own overtime?
> A: They would give it to me and I would sign off that I knew
>    they were there and they were working.
> Q: Right. But what I'm saying is when your staff worked
>    overtime, they would log in the hours that they worked
>    overtime and you'd have to approve it.
> A: Correct.
> Q: For them to get paid.
> A: Yes.
> Q: All right. Then [Defendant Johnson] did not allow you to do

21

that?
A: I think we weren't allowed to do it, not just because of
   [Defendant Johnson]. Just across the board the district
   was trying to save money in overtime if at all possible.
Q: It was district-wide.
A: Yeah.

It is clear from Plaintiff's own testimony that her lack
of ability to approve overtime has nothing to do with her authority
to engage in discretionary decision-making but, that, to the extent
overtime was less likely to be approved, it was due to district-
wide budget issues.  This is confirmed by the testimony of
Defendant Jarvis, which Plaintiff oddly cites for support.  Jarvis
testified as follows:

Q: Did Ms. Kollstedt have the authority to tell them whether
   or not they could work overtime?
A: Sure, yeah.
Q: Well, did she or did she not?
A: She, she did.
Q: Okay, would someone in Ms. Kollstedt's position...have to
   go to their immediate supervisor to confirm whether or
   not [the clerks] were allowed...to work overtime?
A: Most supervisors did check up with their next higher
   supervisor because we had a spending overtime almost like
   a freeze.  So it had to be approved several levels up.

This evidence in no way creates a genuine issue of fact
regarding Plaintiff's exempt status.  Instead, it establishes that
Plaintiff did have the authority to approve overtime, subject to
the restrictions imposed district-wide to save money.

Finally, Plaintiff's assertion that she was not able to
discipline her clerks as she felt was appropriate, unsupported by
a citation to the record, does not create a genuine issue of fact

22

with respect to her <u>authority</u> to discipline them.  Again, the record indisputably supports the finding that she did, in fact, have such authority.  For example, on pages 38 and 39 of her deposition testimony, Plaintiff herself confirms that she did:

> Q: And regardless of whether you did it or not, you had the ability to discipline your clerks?
> A: Yes.

In addition, her 2007 performance evaluation reads, "The list of errors in payoffs, biweekly payroll processing, filing information with other entities, inability to review facts and problem solve accurately, and lack of disciplining staff when needed has reached monumental proportions."  This clearly indicates that Plaintiff was responsible both for problem-solving and for disciplining staff, both of which support a finding of exempt status.  Further, in her deposition testimony, Plaintiff described a conversation she had with Defendant Johnson about staff discipline, which conversation reasonably supports only an inference that Plaintiff had the authority to discipline, even if Defendant Johnson believed she did not exercise that authority as she should:

> Q: Now, do you recall any details about any conversations you had with [Defendant Johnson]...about disciplining staff?
> A: I know that we had talked...like I'm talking to you...saying I don't understand why they would need for discipline.  They were working as a team. We're working hard.  Mistakes happen in payroll....
> Q: But no specific details as far as "I think you need to dock Dani's pay or I think that so and so—
> A: No
> Q: —needs to be put on leave...."
> A: No.

Simply put, Plaintiff has not shown that a genuine issue of fact exists with respect to whether she was an exempt employee. The record indisputably shows that Plaintiff carried out major assignments in conducting Princeton's operations, as she was Princeton's point-person for all aspects of payroll and, among other things, was relied on by Princeton to lead the payroll software conversion. Further, her work clearly "affect[ed] business operations to a substantial degree," as accurate payroll is a critical component to a business. In addition, Plaintiff was responsible for the supervision and evaluation of two hourly, non-exempt clerical staff. Plaintiff clearly exercised discretion and independent judgment on a regular basis, evaluating various courses of conduct and making decisions, whether with respect to the databases she established and maintained, the troubleshooting she engaged in regarding American Fidelity, the liaising she did on behalf of Princeton and its employees with the various insurance companies, the evaluations and the disciplining-or lack thereof-she conducted of her employees, or the implementation of new payroll software. See 29 C.F.R. § 541.202(a). Even if the record could be read to support Plaintiff's assertion that her disciplinary and evaluation decisions were subject to others' approval, as noted above, the regulations explicitly recognize that the fact that an employee's decision may be subject to review and revised or reversed does not mean that the employee is not exercising discretion and independent judgment. 29 C.F.R. § 541.202(c).

The only reasonable inference that can be drawn from the record is that Plaintiff was an exempt employee, not that she merely performed "mechanical, repetitive, recurrent or routine work." Id. Cf. Auer v. Robbins, 65 F.3d 702 (8th Cir. 1995)(finding police sergeants to be exempt employees even when over 80% of their work was the same type of work done by their subordinates). Consequently, summary judgment for Defendants on Plaintiff's FLSA and Ohio wage claims is appropriate.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment (doc. 61) and DISMISSES this case from its docket.

SO ORDERED.

Dated:     January 25, 2011     /s/ S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge